JOHN R. CASWELL et al., as Survivors, etc., Appellants, *v.* ROWLAND N. HAZARD et al., Respondents.

Where judgment in an action tried by the court is reversed by the General Term upon questions of law and fact and a new trial ordered, if upon appeal to this court from the order of the General Term the record presents any error either of law or fact made by the trial court, the order must be affirmed and judgment absolute rendered against the appellant upon his stipulation.

*It seems* the right which every person has to use his own name in the prosecution of his business can be limited and controlled only when such name has become the trade-mark or business sign of another and is being used to deceive the public or defraud the person who made it valuable.

The right to a trade-mark is derived from its appropriation and continued use, and becomes the property of him who first employs it and gives it a name and reputation.

When so appropriated and used by a firm it becomes part of the assets of the firm and can be transferred and sold in like manner as other property belonging to it.

Upon the dissolution of a firm which has acquired proprietorship in a trade-mark, if it is not sold and its proceeds distributed like other firm assets, it remains the property of the individual members, and may be thereafter lawfully used by any or either of them desiring to continue the business.

Prior to 1872 plaintiff C., defendant R. N. H. and one P. C., Jr., were copartners in the firm of C., H. & Co., which firm was engaged extensively

Statement of case.

in manufacturing and selling drugs, medicines, etc., having stores in New York and Newport. The names of C. and H. had been, previous to the organization of that firm, prominent in the trade, and the firm succeeded to the rights, interests and reputation which those names or either of them had acquired. In the year named P. C., Jr., retired from the firm, transferring, with the consent of said plaintiff, all his interest and good will to said defendant. A new firm was thereupon formed to continue the business, composed of C. and defendants, R. N. H. and J. C. H. The new firm took the necessary proceedings required by the act of 1854 (Chap. 400, Laws of 1854) to entitle them to continue, and did continue the business in the old firm name. In July, 1876, this firm was dissolved by mutual consent, C. selling and transferring to the other members his interest in the firm property, except its trade-marks. Among the articles transferred were all signs, labels, bottles and bottle-moulds theretofore used. All of these had the firm name of C., H. & Co. either painted or printed upon them or blown into the bottles. A new firm was then formed, composed of defendants, who took the necessary steps under the statute to enable them to continue the business in the old firm name and thereafter, until 1886, continued the business in that name without interference. Plaintiffs for several years after said transfer, bought goods from, sold to and did business with the new firm of C., H. & Co., under that name. In 1886, this action was brought to restrain defendants from using the name of C. in any way in the prosecution of their business. The Special Term granted the relief sought and by its judgment, among other things, prohibited defendants from making any use of the signs, labels, bottles and bottle-moulds so transferred to them by C. *Held*, error; as the judgment tended to destroy the value of property sold expressly for use in the business, and at least so far as that property was concerned plaintiffs could not claim that the name of C. was used without his permission.

Also *held*, that C., on his retirement from the firm, neither succeeded to the exclusive right to the use of the name of C. as a firm name or as a trade-mark; that defendant R. N. H., both as a member of the original firm and as transferree of the retiring members, had the right to use its trade-marks and signs; and that defendants, as the legitimate successors of the former firm of C., H. & Co., lawfully acquired the right to use that name as a firm name.

The right given by said act of 1854 to those members of a dissolved firm who continue the business, to continue the use of the firm name, upon complying with the requirements of said act, does not depend upon the knowledge or assent thereto of the retiring members; it is absolutely conferred upon the persons succeeding to the business, provided they have business relations with foreign countries and desire to continue the business.

*Hazard* v. *Caswell* (93 N. Y. 259), distinguished.

Reported below, 50 Hun, 230.

(Argued May 8, 1890; decided June 3, 1890.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made December 23, 1888, which reversed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs as survivors of the firm of Caswell, Massey & Co., to restrain defendants from using the name " Caswell " in their business.

The facts, so far as material, are stated in the opinion.

*Wm. H. Arnoux* for appellants. The reversal by the General Term of the judgment of the Special Term upon the facts of this case was erroneous. (*Crane* v. *Baudouine*, 55 N. Y. 256, 264; *Westerlo* v. *De Witt*, 36 id. 345; *Ritch* v. *Smith*, 82 id. 627; *Sherwood* v. *Hauser*, 94 id. 627, 628.) As matter of law, the defendant, Rowland N. Hazard, did not acquire any right to the use of the name Caswell from Philip Caswell in 1872. (*Morgan* v. *Schuyler*, 79 N. Y. 490, 494; *Crontwell* v. *Tye*, 17 Ves. 335; *L. C. Co.* v. *A. L. C. Co.*, 4 De G., J. & S. 143; *Lathrop* v. *Lathrop*, 47 How. Pr. 532; *Barber* v. *C. M. L. I. Co.*, 15 Fed. Rep. 318; *Peterson* v. *Humphrey*, 4 Abb. Pr. 394; *Howe* v. *Searing*, 19 How. Pr. 14; Brown on Trade-marks, § 197; Story on Part. [6th ed.] § 100; Parsons on Part. [3d ed.] § 289.) The right of the defendants to use the name " Caswell " in their firm title has been adjudicated by this court adversely to them. (*Hazard* v. *Caswell*, 93 N. Y. 259; *C. P. Co.* v. *Walker*, 114 id. 7; *Morgan* v. *Schuyler*, 79 id. 495.) Under the laws of this state no man has an assignable interest in his own name for business purposes. (Laws of 1833, chap. 281; *Woods* v. *E. R. Co.*, 73 N. Y. 198; *Peterson* v. *Humphrey*, 4 Abb. Pr. 394; *Smith* v. *Cooper*, 5 Abb. [N. C.] 275; *Devlin* v. *Devlin*, 69 N. Y. 212; *Hegeman* v. *Hegeman*, 8 Daly 1; *M. M. Co.* v. *Wood*, 28 Alb. L. J. 89; *Howard* v. *Henriques*, 3 Sandf. 725.) The amendment to the act of 1833, passed in 1854, did not authorize defendants to use the firm name in question. (*Morgan* v. *Schuyler*, 79 N. Y. 490.) The right to maintain this action is not affected by the sale

to defendants, ten years ago, of a few insignificant articles bearing the firm name of Caswell, Hazard & Co. (*Rieves* v. *Denicke*, 12 Abb. [N. S.] 92, 95.) The court having erred on the merits in reversing the judgment of the court below, the court below should not have reversed on the facts. (*Porter* v. *Smith*, 107 N. Y. 534.)

*Henry H. Anderson* for respondents. A sale or other transfer of the good-will of a business without limitation, passes the right to use the name or trade-mark which symbolizes it. (*Barber* v. *C. M. L. Ins. Co.*, 15 Fed. Rep. 318 ; *Banks* v. *Gibson*, 34 Beav. 566 ; *L. C. Co.* v. *A. L. C. Co.*, 4 De G., J. & S. 143 ; *Clinton* v. *Douglas*, Johns. Ch. 174 ; *Rogers* v. *Nowill*, 3 De G., M. & G. 614 ; Lindley on Part. [4th ed.] 763–861 ; *Levy* v. *Walker*, 48 L. J. [N. S.] 273 ; *Hegeman* v. *Hegeman*, 8 Daly, 5 ; *Rogers* v. *Taintor*, 97 Mass. 297 ; *Drake* v. *Dodsworth*, 4 Kan. 172.) The court further erred in finding that the use of the name Caswell by the defendants was calculated to and does mislead the public into believing that the defendants' copartnership contains a person by the name of Caswell. (*Hegeman* v. *Hegeman*, 8 Daly, 1.) The defendants acquired the right to continue the use of the old firm name by virtue of the statutes of the state of New York. (*Wood* v. *E. R. Co.*, 72 N. Y. 198, 199 ; *Gay* v. *Siebold*, 97 id. 472.) Rights in a trade-mark are analogous to rights in the good will of a partnership. (*Young* v. *Jones*, 3 Hughes, 275.)

RUGER, Ch. J. We think the case of *Hazard* v. *Caswell* (93 N. Y. 259) is a controlling authority on this appeal upon the question of the respective rights of the plaintiff Caswell and the defendant Rowland N. Hazard in the use of the name of "Caswell" as a trade-mark, in a business carried on by either of them. It was there held, upon the dissolution of a firm, having established trade-marks and a good will, which had not been disposed of or transferred upon such dissolution, that such assets remained the property of the individual members and could lawfully be employed thereafter by either of

such members in the prosecution of his business. It was further determined that the dissolution of the partnership of " Caswell, Hazard & Co." in 1876, and the transfers and agreements then made between the partners, did not dispose of the trade-marks of the firm, and that John R. Caswell and Rowland N. Hazard, each possessed the right thereafter to use and employ those formerly belonging to the firm, as he desired to do, without infringing upon the rights of the other. We are entirely satisfied with the correctness of that decision and feel no disposition to impair its force as an authority upon the questions then decided. Although I did not concur in that decision my dissent did not proceed upon any doubt as to the soundness of the principle above stated. We think the facts in this case bring it directly within the operation of the rule there laid down. Both the plaintiff John R. Caswell and the defendant Rowland N. Hazard, were on July 31, 1876, and for ten years previously thereto had been members of the firm of Caswell, Hazard & Co., carrying on the business of manufacturing and selling in Newport and New York, drugs, etc., and during that time, as such firm, used and enjoyed all the privileges which are now claimed by the respective parties to this action. It would seem, therefore, to follow, as a matter of course, that either of the members of such firm could, after its dissolution, lawfully use its trade-marks in any business thereafter carried on by him.

A brief history of the organization of that firm and its mode of prosecuting business, exhibits the relation these parties respectively bore to the trade-marks of the firm at the time this suit was commenced. Previous to the year 1867, the several names of Caswell and Hazard had been prominent in the trade of manufacturing and selling drugs and medicines and other articles connected with such trade, in the cities of Newport, Rhode Island, and New York. The business originally started at Newport as early as 1821, and was there carried on until some time previous to 1867, when a branch was opened in the city of New York. The names of Caswell and Hazard had subsequent to the year 1821, been continuously used in such trade, either in

conjunction or separately; but always in some firm regularly succeeding a prior firm. It is of but little importance what position either of these parties bore to such business previous to 1867, as in that year all their rights were merged in a new firm then organized. In that year the name of "Caswell, Hazard & Co.," was first used and that firm regularly succeeded to all of the rights, interests and reputation which those names, or either of them, had previously acquired in the public estimation, both in the cities of Newport and New York. This firm consisted of Philip Caswell, Jr., Rowland N. Hazard, the defendant, and John R. Caswell, one of the plaintiffs herein. Philip Caswell, Jr., owned fourteen-thirtieths, Rowland N. Hazard, nine-thirtieths, and John R. Caswell, seven-thirtieths of the firm assets. Philip Caswell, Jr. retired from this firm in 1872, transferring, with the consent of John R. Caswell, all his interest and *good-will* in such firm to Rowland N. Hazard, and covenanting that he would not within twenty years go into the business of druggist or apothecary in either of the cities of Newport or New York. He also took a covenant from Hazard, indemnifying and protecting him from all loss or liability from existing debts or the future liabilities of the succeeding firm. This purchase gave Hazard a largely preponderating interest in the assets of the firm. A new firm was then formed, composed of Rowland N. Hazard, John R. Caswell and John C. Hazard, to continue the business of Caswell, Hazard & Co., at the former places of business of that firm. In the new firm Rowland N. Hazard retained an interest of sixteen-thirtieths, John R. Caswell seven-thirtieths, and John C. Hazard acquired an interest of seven-thirtieths. The new firm took the necessary proceedings and published the advertisements required to entitle them to continue business under the firm name of "Caswell, Hazard & Co.," according to the provisions of chapter 400 of the Laws of 1854. This firm continued business until July 31, 1876, when it was dissolved by mutual consent, and John R. Caswell sold and transferred to its remaining members his interest in the property of the firm, except its trade-

marks, and a part of the retail stock in trade, which was proportionately divided between the partners. Among the articles thus transferred was the real estate at Newport in which the business of the firm had theretofore been carried on at that place; the fixtures in the various stores occupied by them in New York, and all signs, labels, bottles and bottle-moulds theretofore used in the business. These goods had the firm name of "Caswell, Hazard & Co." either painted or printed upon them or blown into the bottles thus transferred. The defendants also assumed the unexpired leases of the various places of business in New York, where the business had been previously conducted, and agreed to collect and settle the outstanding accounts and debts of the old firm and purchased of Caswell the prescription books theretofore used in the firm and became the legitimate successors to such firm. The plaintiffs, for several years after the sale, bought goods, received payments from and did business with the new firm of Caswell, Hazard & Co. under that name. The defendants, upon the retirement of John R. Caswell and the formation of this new firm, took the necessary steps to enable them to continue business under the firm name of "Caswell, Hazard & Co." as the successors of the former firm of that name, according to the provisions of chapter 400 of the laws of 1854, and from that time until 1886 continued and carried on their business at all the former places of business occupied by Caswell, Hazard & Co. without interruption or disturbance from anyone. John R. Caswell afterwards formed a partnership with one Massey, under the firm name of Caswell & Massey, and in November, 1876, opened a drug store in New York, near one of the defendants' stores, and continued thereafter to prosecute such business under such firm name or others similar thereto. At the expiration of nearly ten years from his withdrawal from the firm of Caswell, Hazard & Co., John R. Caswell, in behalf of his firm, began this suit, claiming the exclusive right to use the name of "Caswell" in connection with the conduct of the business of manufacturing and selling drugs, etc., in the city of New York and elsewhere, and asking that the defendants

be perpetually enjoined from using such name in any way in
the prosecution of such business.   The court, at Special Term,
gave judgment awarding the plaintiffs an injunction to the
full extent claimed against the defendants, and this judgment,
on appeal to the General Term, was reversed both upon
questions of law and of fact and a new trial was ordered.
The plaintiffs appealed from such order to this court upon a
stipulation for judgment absolute in case such order should be
affirmed.

On such an appeal, if the record presents any error, either
of law or of fact, made by the trial court which called for a
reversal of its judgment, the order of the General Term must
necessarily be affirmed by this court.   The extreme danger
which parties, having a cause of action and having recovered
a judgment therefor, incur by appealing from an order grant-
ing a new trial to this court has been too frequently pointed
out in its decisions to need further remark, and it would seem
that no amount of admonition is sufficient to discourage par-
ties from taking such appeals.   (*Cobb* v. *Hatfield,* 46 N. Y.
533.)

A single consideration, pointed out in the opinion of the
court at General Term, serves to show that the reversal in
this case was properly ordered, if for no other reason than
because the judgment rendered by the trial court absolutely
prohibited the defendants from making any use of the signs,
labels, bottles and bottle-moulds bearing the name of " Cas-
well, Hazard & Co.," sold to them by John R. Caswell.   This
property was sold expressly for use in the business intended to
be carried on by the defendants, and obviously exceeded any
legal claim which the plaintiffs could lawfully maintain.

The claim made by the plaintiffs in this action is sought to
be sustained under an alleged right existing in favor of John
R. Caswell to the exclusive use of the trade-marks, including
the use of the name of Caswell, formerly employed by the
firm of " Caswell, Hazard & Co." in their business.

In discussing the case it is, therefore, necessary to refer
only to the rights secured by John R. Caswell and Rowland

N. Hazard, respectively, as members of the firm of Caswell, Hazard & Co., as it is through such interests that both the plaintiffs and defendants now claim to derive their respective rights.

Much stress was laid on the argument by the defendants upon the rights acquired by Rowland N. Hazard through the purchase made in 1872 from Philip Caswell, Jr., of his interest and good will in the firm of Caswell, Hazard & Co. We do not think a consideration of the effect of that purchase is very important in this case, as it cannot be claimed that Hazard thereby acquired any right in the assets or good will of such firm, which then or afterwards belonged to John R. Caswell. He could have acquired an exclusive right to the use of such property only by virtue of a transfer to him by all of the parties interested therein, and so long as an outstanding right in such property existed in favor of anyone, he could not maintain an exclusive claim thereto.

It also seems unnecessary to consider the prior rights, interests and reputation of the individual members of such firms, as upon the organization of that firm they became merged therein, and by its continued use and enjoyment became its property and, upon dissolution, belonged in common to its respective members, according to their respective interests in such firm. The trial court found that the firm of Caswell, Hazard & Co., during its existence from 1871 to 1876, transacted a very extensive business in New York city and Newport and throughout the United States, and also in Europe, as chemists, apothecaries, druggists, manufacturers of and dealers, both at wholesale and retail, in drugs and medicines, and, as owners, proprietors and manufacturers of many proprietary medicinary remedies, toilet articles, preparations and compounds. This finding seems to be entirely in accordance with the proof in the case and is of controlling force in the determination of the rights of the respective partners in the trademarks and assets of that firm.

These facts seem to present two questions for determination in the case: First, whether John R. Caswell, upon

retiring from the firm of Caswell, Hazard & Co. in 1876, suc‚
ceeded to the exclusive right of using the name of "Caswell"
as a firm name in connection with the prosecution of the
business of thereafter manufacturing and selling drugs, medi-
cines, etc., in the cities of New York and Newport. Second,
whether he then succeeded to the *exclusive right* of using the
name of "Caswell," either alone or in connection with others,
as a trade-mark in carrying on such business. It is essential
that the plaintiffs should successfully maintain the affirmative
of both of these propositions in order to sustain this appeal;
for if the defendants had any right to use the name of "Cas‚
well," either as a firm name or as a trade-mark, it is obvious
that the judgment rendered by the trial court was erroneous
to a certain extent, and was properly reversed by the General
Term. It seems to us quite clear that the plaintiffs have
failed to maintain either of these claims. The right which
every person has to use his own name in the prosecution of
his business cannot be disputed, and this right can be limited
or controlled only when such name has become the trade-mark
or business sign of another, and is being used to deceive the
public or defraud the person who made it valuable. (*Devlin*
v. *Devlin*, 69 N. Y. 212; *Meneely* v. *Meneely*, 62 id. 432.)
Conceding, therefore, the right of John R. Caswell to use his
own name and the trade-marks of the firm of Caswell, Hazard
& Co. in his business, it falls far short of securing to him the
right to the exclusive use of the name of Caswell which had
been largely made valuable in trade by the capital, skill and
enterprise of others. From 1867 to 1872 that name in the
firm of Caswell, Hazard & Co. mainly represented Philip
Caswell, Jr., and the defendant Rowland N. Hazard suc-
ceeded by assignment to all his rights in that firm. There is,
therefore, no foundation for the claim of John R. Caswell,
that he succeeded in any respect to the rights or reputation
which Philip Caswell, Jr., acquired in the business of Caswell,
Hazard & Co. Rowland N. Hazard, by his purchase, acquired
all such rights as could lawfully be enjoyed by any purchaser,
and, in addition thereto, possessed the rights belonging to him-

self as a member of the various firms doing business under the firm name of " Caswell, Hazard & Co." The right of Rowland N. Hazard to use the trade-marks and signs of Caswell, Hazard & Co. seems to rest as securely upon those which he acquired as a member of such firms, as upon the rights transferred to him by the several members of such firm. The right to a trade-mark is derived from its appropriation and continual user, and becomes the property of those who first employ it and give it a name and reputation. (*Devlin* v. *Devlin*, 69 N. Y. 212; *Colman* v. *Crump*, 70 id. 578.) It becomes part of the assets of the firm by which it was used and established, and can be owned, transferred and sold like other species of property. Upon the dissolution of a firm which has acquired its proprietorship, it must be sold and its proceeds distributed like other firm assets, and, if not so disposed of, it remains the property of the individual members of the dissolved firm, and may lawfully thereafter be used by any or either of such members desiring to continue the prosecution of the business in which it has theretofore been used. (*Huwer* v. *Dannenhoffer* 82 N. Y. 500; *Hazard* v. *Caswell, supra.*)

Assuming, therefore, the correctness of the plaintiffs' claim, that upon the dissolution of the firm of Caswell, Hazard & Co. in 1876 there was no transfer by either party to the other of the right to use its trade-marks and firm name, yet the right thereafter to use its trade-marks then became vested in the individual members of such firm, and could be lawfully employed by either without trespassing upon the rights of the other. This proposition, as we have seen, was expressly held in the case of *Hazard* v. *Caswell*, between these same parties. That case depended substantially upon the state of facts existing in this case, and the present defendants then claimed the right to restrain the plaintiffs from using either the name of " Caswell " or the trade-marks formerly used by the firm of Caswell, Hazard & Co. in manufacturing and putting up a certain description of cologne. They claimed a right to the exclusive use of such name and trade-mark by

reason of the various transfers of property made to them by Philip and John R. Caswell, and sought to restrain Caswell from the use of his own name. It was held that neither party secured an exclusive right to the use of such trade-marks by reason of such transfers, and that upon the dissolution in 1876 of the firm of Caswell, Hazard & Co., in the absence of any disposition of such property, either of the members of such firm had the right to make use of them in his separate business. That decision seems to be conclusive as to the main question here involved, and renders the question of the right to use the name of " Caswell " as a trade-mark in connection with the business of manufacturing and selling drugs and medicines by either of the former partners *res judicatœ* as between such parties. (*Huwer* v. *Dannenhoffer*, 82 N. Y. 500.)

Even if this were not so, it seems difficult to resist the conclusion that John R. Caswell, by the sale and transfer to Caswell, Hazard & Co. in 1876 of the property of the old firm bearing the name of " Caswell, Hazard & Co.," indelibly printed or impressed thereon, for use in their business, knew and intended that such property at least should be thereafter used and sold by the vendees in their business as successors to the former firm. The fact that it could be so used was the only apparent inducement for its purchase by the defendants, and this must have been known and understood by John R. Caswell, and he could not thereafter claim that, so far as that property was concerned, it was used without his permission.

We are also of the opinion that the present defendants have, as the legitimate successors to the former firms of " Caswell, Hazard & Co.," lawfully acquired the right to use that name as a firm name. At common law it was undoubtedly the right of such members of a dissolved firm having acquired an established reputation for the character and quality of the goods manufactured and sold by them, who desired to continue such business, to continue the former firm name and transact business thereunder, although none of such parties bore the names contained in the original firm. (*L.*

*C. Co.* v. *A. L. C. Co.*, 4 De G., J. & S. 143; 11 H. L. Cas. 534.)

Under the provisions of chapter 281 of the Laws of 1833, however, such right is now attainable in this state only by a compliance with the requirements of chapter 400 of the Laws of 1854. These acts do not assume to confer upon the members of a continuing firm any rights of property possessed by the members of the dissolved firm; but they do provide that, under certain conditions and upon taking certain proceedings, the members of a succeeding firm may continue business under the former firm name, although no person in such succeeding firm bears the name of any of the retiring members of the original firm.

Upon the retirement of Philip Caswell from the firm of Caswell, Hazard & Co. in 1872, as well as upon the withdrawal of John R. Caswell in 1876, the defendants or their predecessors took all of the necessary proceedings required under the statute of 1854, to entitle them to continue business under the firm name of Caswell, Hazard & Co., and they have continued such business, by virtue of such proceedings, under that firm name without interruption or molestation from 1872 to 1886, and we can see no reason why they did not thereby become lawfully entitled to use such name.

The publication of notices in 1872 could have had no other object than to invest Rowland N. Hazard with the right to the continued use of such firm name. There was no necessity for the firm formed in 1872 to resort to those proceedings to authorize them to use the name of "Caswell" in their firm name, because it was then represented by one of the partners, and the only object of such proceedings seems to have been to perpetuate the name and reputation which the former firm had acquired for the benefit of the several members of the new firm. A similar object would seem to have instigated the subsequent publication in 1876, and the right to make such publication does not, under the statute, seem in any respect to depend upon the knowledge or assent thereto of the retiring members. The statute appears to confer the absolute right to

perpetuate the firm name upon the persons succeeding to the business of a dissolved firm, provided they have business relations with foreign countries and desire to continue such business.

A possible question might arise as to the liability of a retiring member for the subsequent transactions of the succeeding firm, but there has been no such claim raised in this case, and after the lapse of ten years it would seem to be quite too late to present it if it ever existed. It is not now claimed that any such question is involved, but the action is sought to be supported upon the sole ground that no person bearing the name of Caswell is now represented in such firm. The objection to the use of the name "Caswell" is founded wholly upon the prohibitions contained in the act of 1833, and takes no account of the exception to such prohibition introduced by the act of 1854. Some difficulty in administering this act might arise in a case where there were conflicting claims between the several members of a dissolved firm as to the right to continue the use of the old firm name, but no such question arises here, as John R. Caswell was in no sense the successor of such firm, and never attempted to use their name or continue their business. He not only abandoned all claim to continue the use of the old firm name or succession to its good will so far as it was affected by the places of doing such business, but by his subsequent dealings with the defendants seemed to acquiesce in their appropriation of such name.

Some foundation for the plaintiffs' claim is supposed to have been found in expressions used in the opinion of this court in the former case of *Hazard* v. *Caswell*. It is sufficient to say that the question was not there involved and could not have been decided. The sole question then presented was whether Rowland N. Hazard acquired the exclusive right to use the name of "Caswell," in connection with others, as a *trade-mark* in the manufacture and sale of a certain description of cologne, and it was held that he had not, and that the right to such use rested equally in both Caswell and Hazard as members of such firm.

We are, for reasons stated, of the opinion that the plaintiffs failed to establish the causes of action set forth in their complaint, and that the order of the General Term should, therefore, be affirmed, and judgment absolute ordered for defendants, with costs in all courts.

All concur.

· Order affirmed and judgment accordingly.