MARY A. CHURCH, Respondent, *v.* LEWIS KRESNER, Appellant.

*Use of a business name — injunction to prevent another person from assuming it.*

A person whose name was not Cameron established a ready-made clothing house under the name "Cameron's," and made a reputation for the name, giving it a value as a clothing-house designation.

*Held,* that she was entitled to an injunction restraining another person, who had opened a ready-made clothing store in the immediate vicinity, from assuming such name (not his own) in his business, and thereby deceiving the public into the belief that the defendant's place of business was in fact that of the plaintiff.

APPEAL by the defendant, Lewis Kresner, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 14th day of July, 1896, upon the decision of the court rendered after a trial at the Kings County Special Term enjoining him from the use of the trade or business name of "Cameron's."

*Max Klein,* for the appellant.

*Edward M. Grout* [*Charles H. Hyde* with him on the brief], for the respondent.

WOODWARD, J.:

The plaintiff in this action established in the court below that early in the year 1892 she entered into the retail clothing business at 209 Flatbush avenue, in the city of Brooklyn, under the name and style of "Cameron's," and has continued to conduct such busi-

ness up to the present time; that at the time of entering into such business there was no other establishment in the city of Brooklyn using the name which she adopted, nor has there been any such business house known as "Cameron's" until the defendant sought to make use of this name; that the plaintiff advertised her business as "Cameron's" and became widely known as a dealer in ready-made clothing under that name, procuring a large number of customers, with whom the establishment was in good repute; that in May, 1894, the defendant opened a store for the sale of ready-made clothing in the immediate vicinity of the plaintiff's establishment, and soon after, through his agents and employees, began to create the impression that his store was "Cameron's," and that by the use of the name and the adoption of many of the devices of the plaintiff, the defendant secured to himself many of the benefits of the plaintiff's good reputation as a dealer in ready-made clothing, to her great injury; that finally, in September, 1895, the defendant openly proclaimed, by means of signs and other devices, his place as "Cameron's;" that such adoption by defendant of the name of "Cameron's" as a business name or trade sign, and his conduct of a business similar to the plaintiff's thereunder, was solely for the purpose of deceiving the public into the belief that defendant's place of business was in fact the plaintiff's place of business, and that its effect has been to mislead and divert trade established by plaintiff from her to the defendant, and that thereby the plaintiff has been greatly injured.

The learned court then finds as a conclusion that the "plaintiff possessed a property right in the name 'Cameron's' as a business trade name or mark; that the adoption of the same name by defendant was unlawful; * * * that as against this defendant the plaintiff has the exclusive right to the name, having first adopted it; that plaintiff is entitled to an order enjoining and restraining the defendant from the further use of the name in any manner whatever in his business, and from further interfering with plaintiff's business by advertising his place as 'Cameron's;' that plaintiff is further entitled to damages in the sum of fifty dollars and the costs of this action, and payment is so ordered."

The evidence fully establishes the facts as set forth in the memorandum of the court, and it is not necessary for the purposes of this

appeal to go into the conflicting testimony and the complicated relations of some of the parties who appear in the evidence, as to the original ownership and final disposition of the title to the word "Cameron's," as applied to the business of retail clothing. The fact is established that the original company, whatever its nature may have been, made a general assignment, and that the business was closed up, so that there could have been no value in the name except as it was afterwards acquired by this plaintiff in the regular conduct of the business. The plaintiff adopted the name after it had been dropped by the company originally using it, as she had a clear right to do, and its sole value, at the present time, is derived from the character and standing of the business which she has conducted under the name of "Cameron's" from the early part of 1892.

It does not seem profitable or necessary at this time to review the long line of cases which sustain the court below in its judgment. "It is well settled," says Chief Judge ANDREWS, in *Charles S. Higgins Company* v. *Higgins Soap Company* (144 N. Y. 462), "that an exclusive right may be acquired in the name in which a business has been carried on, whether the name of a partnership or of an individual, and it will be protected against infringement by another who assumes it for the purposes of deception, or even when innocently used without right to the detriment of another;" and this has been the unvarying attitude of the courts from the decision of the case of *Lee* v. *Haley* (L. R. [5 Ch. App.] 155), which was an action to restrain the use by the defendant of the name of the Guinea Coal Company in his business. In this case, which is cited with approval by Judge ANDREWS in the *Higgins Soap* case, the plaintiffs had for a series of years carried on business as coal dealers in Pall Mall, London, under the name of the Guinea Coal Company, and they were frequently called the Pall Mall Guinea Coal Company. The defendant, who had been their manager, finally set up business in the same street under the style of the Pall Mall Guinea Coal Company, and while it appeared that there were other Guinea coal companies in London, so that the plaintiffs did not have the exclusive right to the use of the trade mark Guinea Coal Company, yet the court held that they were entitled, as against the defendant, to be protected in the use of the name. Lord Justice GIFFORD, writing the opinion of the court, says: "I quite agree that

they (plaintiffs) have no property in the name, but the principle upon which the cases on this subject proceed is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name."

This same case is cited with approval in the case of *Newman* v. *Alvord* (51 N. Y. 189), Commissioner EARL delivering the opinion of the court, and it may be fairly said to state the law as it exists in the State of New York in respect to the case at bar.

In the case of *Devlin* v. *Devlin* (69 N. Y. 212) the court went so far as to hold that the defendant could not use his own name, except with his initials plainly connected with the name, as a sign, because such use tended to "mislead or induce the public to believe or suppose he is the plaintiffs." In *Caswell* v. *Hazard* (121 N. Y. 484), Judge RUGER, delivering the opinion of the court, says: "The right which every person has to use his own name in the prosecution of his business cannot be disputed, and this right can be limited or controlled only when such name has become the trade mark or business sign of another, and is being used to deceive the public or defraud the person who made it valuable."

"Whether the court will interfere in a particular case must depend upon circumstances; the identity or similarity of the names; the identity of the business of the respective corporations; how far the name is a true description of the kind and quality of the articles manufactured or the business carried on; the extent of the confusion which may be created or apprehended, and other circumstances which might justly influence the judgment of the judge in granting or withholding the remedy," says Judge ANDREWS in the case of *Charles S. Higgins Company* v. *Higgins Soap Company* (*supra*), and these matters all seem to have been taken into consideration by the trial court in arriving at its judgment.

The plaintiff had established a business under the name of "Cameron's;" that business was the sale of ready-made clothing. After she had made a reputation for the name, giving it a value as a clothing-house designation, this defendant secured a location in the

immediate vicinity and adopted the same name, with the undoubted intention of taking to himself the benefits incident to a good name and business, and the plaintiff has the same right to protection that she would have if any other valuable property were to be taken from her by the defendant for his own use and enjoyment. If the defendant had been desirous of building up a reputation for himself; if he had not found the name of "Cameron's" to have a value to which he had contributed no part, and to which he had no right of enjoyment, can we conceive of a reason why he should, after a business experience of some months, take to himself a name which had already been adopted by another in the same line of business and in his own immediate locality? There can be but one answer to this question.

The judgment of the trial court is affirmed, with costs.

All concurred.

Judgment affirmed, with costs.