BARCLAY v. BARCLAY et al. (No. 3831.)

(Supreme Court, Special Term, New York County. July 30, 1915.)

1. TENANCY IN COMMON ⬄21—USE OF PROPERTY—RIGHTS OF PARTIES.

The general principle that such property as a trade-name, the good will of a business, trade-marks, copyrights, and labels is susceptible of separate and independent use by co-owners, and may be so used separately by each so long as such use is not exclusive of the rights of the others also to use the common property, is subject to the qualification that there must be no restriction upon such right, either by agreement of the parties or in the nature of the tenancy, creating a quasi fiduciary relation between the tenants or inhibiting the separate use.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⬄21.]

2. TENANCY IN COMMON ⬄21—FIDUCIARY RELATION—DEVISEES OF BUSINESS.

Where two brothers were joint devisees of their father of rights in the firm name, good will, trade-marks, copyrights, and labels of a business, they occupied a confidential relation to one another by operation of law as to the joint property, as if a joint trust had been created, and an obligation rested upon each to do nothing to the prejudice of the other's rights.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 62; Dec. Dig. ⬄21.]

3. TENANCY IN COMMON ⬄35—TRANSFER TO CORPORATION—EFFECT.

A father jointly devised to his two sons the firm name, good will, and trade-marks, copyrights, labels, etc., owned by him and used by a copartnership under a rental agreement. Such sons made an agreement that,

they being owners in equal shares as tenants in common of the business, good will, and firm name of the copartnership, and of all trade-marks, etc., and desiring that upon the death of either the survivor should have the right to continue the business and to use all trade-marks, etc., such survivor should have the exclusive right during his life, or until a sale was made as later provided, to use the half interest of the deceased party in the jointly owned property. The provision for the sale of the business was that the personal representative might not sell the share of the deceased brother until 60 days' notice to the other brother to purchase. After the death of one of the brothers, the business was continued by the surviving brother through a corporation of which he owned all but 12 shares of the common stock; he having conveyed the good will, trade-marks, copyrights, etc., of the original business to such corporation in return for its stock. The profits of the deceased brother's share of the property were paid to his widow and executrix until a certain date, when the surviving brother notified her in writing that after a certain date he would no longer exercise the exclusive right to use her half interest in the firm name of the original business, the good will, trade-marks, copyrights, etc., under the agreement between the brothers. Later such surviving brother notified the corporation, purporting to terminate its right to use the privileges given it previously in return for its stock. Thereafter the corporation continued to use such privileges as before, but no returns were made to the deceased brother's widow and executrix, who sued her brother-in-law and the corporation. *Held*, that relief could not be denied on account of the separate corporate entity that used the property, since, when a court of equity is endeavoring to adjust rights between parties, it looks at the merits rather than the legal form, and therefore will disregard the fiction of separate corporate existence, where justice requires.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 27; Dec. Dig. ⟐⟐35.]

4. TENANCY IN COMMON ⟐⟐37—ACCOUNTING—DECREE.

Where plaintiff widow and executrix sued her brother-in-law and a corporation, to which he had transferred his interest as joint tenant with the decedent in the good will, trade-marks, etc., of a business, in an attempt to defraud plaintiff, such brother-in-law being the chief stockholder and executive officer of the corporation, the plaintiff could ratify the sale to the corporation and recover one-half of the amount of stock the defendant, her brother-in-law, received for the common property, or could have a decree that the corporation took the property charged with the performance of an agreement between the brothers, when they became joint tenants of the property, regulating their mutual rights upon the death of one.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 106; Dec. Dig. ⟐⟐37.]

Action by Clara S. Barclay, trustee, etc., against Reginald G. Barclay and others. Decree for plaintiff.

See, also, 162 App. Div. 557, 147 N. Y. Supp. 597.

William W. Cook, of New York City (D. Cady Herrick, of Albany, and R. H. Overbaugh, of New York City, of counsel), for plaintiff.

Gould & Wilkie, of New York City (Charles F. Brown, of New York City, of counsel), for defendants.

PAGE, J. A copartnership known as Barclay & Co. was formed in 1873 between Alexander Barrie and Thomas Barclay. George C. Barclay was not a member of the firm of Barclay & Co., but he controlled and owned the firm name, good will, and the various trademarks used in the business, which the copartnership used under a

rental agreement with George C. Barclay. George C. Barclay died in November, 1897, and bequeathed the aforesaid property to his two sons, William O. Barclay and Reginald G. Barclay, in equal shares, charged with certain monthly payments to his wife and daughter. On December 31, 1897, a partnership agreement was entered into between William O. Barclay, Reginald G. Barclay, and Alexander Barrie to carry on business under the firm name of Barclay & Co. On the same date an agreement was made by the executrices of the will of George C. Barclay with the said persons, as copartners, whereby during the continuance of the copartnership they were given the right to use the name of Barclay & Co. and the good will thereof, and various trade-marks which at his death had been the property of George C. Barclay. On November 21, 1898, a new partnership agreement was entered into between the same parties and for the same purposes as set forth in the agreement of December 31, 1897. Successive copartnership agreements, and agreements for the use of the firm name, trade-marks, etc., until the death of William O. Barclay, in practically identical terms with those above mentioned, were executed. On August 1, 1900, William O. Barclay and Reginald G. Barclay entered into an agreement defining their rights, and providing for a right of sale of the interest of either to the other, and for the right of the legal representatives in case of the death of either party and of the survivor. This agreement will be more fully considered hereinafter. William O. Barclay appointed his wife and Reginald G. Barclay his executors and trustees by his will, and further provided:

"I authorize and empower my trustees and their survivors to retain as a trust investment my interest in the business, good will and firm name of Barclay & Co., and in all trade-marks used in connection therewith, and to lease the same for such rentals and upon such terms, from time to time, as they may deem best, or, with the concurrence of my said wife, to sell the same, either at public or private sale."

Reginald G. Barclay did not qualify as an executor and trustee under the will, and the plaintiff qualified as the sole executrix and trustee. On December 19, 1901, Reginald G. Barclay and Alexander Barrie entered into a copartnership agreement, substantially the same as had theretofore existed between William O. Barclay and themselves, so far as any facts material to this case are concerned; and on the same date an agreement for the use of the firm name of Barclay & Co., trade-marks, etc., was entered into between Clara S. Barclay, as executrix of William C. Barclay, and Reginald G. Barclay, as owners of the same, on the one part, and Reginald G. Barclay and Alexander Barrie, as copartners, on the other part. This agreement expired on December 31, 1902, and was extended to December 31, 1903, and does not appear to have been thereafter renewed. The copartnership agreement, however, was successively renewed until January 1, 1913, and thereafter down to May, 1914, Reginald G. Barclay continued in business alone under the firm name of Barclay & Co., having complied with the statutory requirements in that behalf.

In April, 1913, Reginald G. Barclay caused to be incorporated, under the laws of the state of Delaware, Barclay & Co., with an authorized capital stock of $3,000,000, divided into $1,000,000 8 per cent. cumula-

tive preferred and $2,000,000 common stock. On the 7th day of May, 1914, Reginald G. Barclay proposed to sell and convey to this corporation all his right, title, and interest as of May 1, 1914, of any and every kind or nature whatsoever, in and to the business of Barclay & Co., the assets of said business as shown by the balance sheet of said business as of May 1, 1914, the name Barclay & Co., the good will of said business and said name, and all trade-marks, copyrights, and labels, etc. (save and except such rights or interest as he may have under and by virtue of a certain agreement relating to the business of Barclay & Co., entered into, on or about the 1st day of August, 1900, by and between his brother, William O. Barclay, now deceased, and himself, or any agreement or agreements supplemental thereto), in consideration of the issuance to him of 5,000 shares of the preferred stock, and 19,985 shares of the common stock. This offer was the same day accepted by the corporation, and the necessary bill of sale, conveyance, and agreement were executed, transferring to the corporation everything that Barclay & Co. had possessed or used in the conduct of its business. The employés, sales agents, and all the organization as well as the physical properties of the copartnership were thereafter used by the corporation. Thirty-three and one-third per cent. of the net profits were turned over to R. G. Barclay under an agreement for the use by the corporation of the rights and privileges which he had under the agreement of August, 1900, with his deceased brother. This profit was by R. G. Barclay paid to the plaintiff until January 1, 1915.

On November 30, 1914, he notified the plaintiff in writing that after December 31, 1914, he would no longer exercise the exclusive right to use the plaintiff's half interest in the firm name of Barclay & Co., good will, trade-marks, copyrights, and labels under the agreement of August 1, 1900, and would after said date no longer make use of such half interest. And on or about December 28, 1914, R. G. Barclay gave written notice to the corporation, terminating its right to use the rights and privileges which he had under the agreement of August 1, 1900, and which had been given to it on May 7, 1914. Since January 1, 1915, the corporation has used and enjoyed all the privileges which it theretofore enjoyed, and no returns have been made to the plaintiff.

Defendant's theory of the case is that R. G. Barclay was a tenant in common with the plaintiff, and as such had the right to use and enjoy the common property, and that he sold to the corporation his half interest, which gave to it the right to use the common property, and so long as the plaintiff was not prohibited from using her half interest she has no cause of action against the defendants.

[1] While it is undoubtedly true that it is well settled that property such as that involved in this action—a firm name, good will, trade-marks, copyrights, and labels—is in its nature susceptible of separate and independent use by two or more co-owners (Taylor v. Bothin, 5 Sawy. 585, Fed. Cas. No. 13,780; Young v. Jones Bros. & Co., 3 Hughes, 274, Fed. Cas. No. 18,159; Huwer v. Dannenhoffer, 82 N. Y. 499; Hazard v. Caswell, 93 N. Y. 259, 45 Am. Rep. 198; Merry v. Hoopes, 111 N. Y. 415, 18 N. E. 714; Caswell v. Hazard, 121 N.

Y. 484, 24 N. E. 707, 18 Am. St. Rep. 833; Lepow v. Kottler, 115 App. Div. 231, 100 N. Y. Supp. 779), and may be so used by each, so long as such use is not exclusive of the rights of the others also to use the common property, this general principle is subject to the qualification that there is no restriction thereon, either by agreement of the parties or in the nature of the tenancy, that creates a quasi fiduciary relation between the tenants or inhibits its separate use. It becomes necessary therefore, to consider and determine the nature and quality of the ownership of the parties in the property under consideration and to what extent its use has been limited by the agreements of the parties.

[2] As we have seen, the rights in the firm name, good will, trademarks, copyrights, and labels became vested in William O. and Reginald G. Barclay as joint devisees under the will of their father. Therefore in the inception of their estate they occupied a confidential relation to each other by operation of law as to the joint property, as if a joint trust had been created, and a reciprocal obligation was imposed to do nothing to the prejudice of each other's joint claim. Van Horne v. Fondar, 5 Johns. Ch. 388, 407.

[3] During the lifetime of William O. Barclay the joint property was so managed that the benefits derived therefrom were mutually advantageous. This property was kept separate and distinct from the partnership, and it was expressly provided that on dissolution of the copartnership the firm name, good will, trade-marks, etc., were to revert to William O. and Reginald G. Barclay. The right to use for a limited period was all that was given to the partnership, and the amount realized therefrom was equally divided between them. On August 1, 1900, an agreement was entered into between William O. and Reginald G. Barclay, wherein was recited that they were owners in equal shares as tenants in common of the business, good will, and firm name of Barclay & Co., and of all trade-marks, copyrights, and labels used in connection therewith, subject to the payment of an annuity to Blanche Barclay and subject to terminable copartnership articles, and that:

"The parties hereto desire that upon the death of either the survivor shall have the right, in the manner and upon the terms and conditions hereinafter specified, either alone or in copartnership with another or others, or through a corporation of which he may be a member, to continue the business of Barclay & Co., and to use all trade-marks, copyrights, and labels now owned or hereafter acquired by the parties hereto."

It is agreed that:

Upon the death of either party thereto "the survivor shall have and is hereby granted the exclusive right during his life, or until a sale made as hereinafter provided, to use the half interest of such deceased party in the good will and firm name of Barclay & Co., and in all trade-marks, copyrights and labels now owned or hereafter acquired by the parties hereto, upon condition of payment of a proportion of the net profits of the business of Barclay & Co."

—which the survivor covenants and agrees to pay in the manner therein provided. The legal representatives of the deceased party, it is provided,

"shall have no voice or control during such time in the management of said business, and no interest or property in the profits as such."

155 N.Y.S.—15

It is then provided that neither party, during the life of the other, shall sell his half interest without first giving a written notice of his intention to sell and an option for 60 days to the other party to purchase at a price to be ascertained and paid as therein provided.

"Upon the death of either party hereto his legal representatives shall not sell, and are hereby enjoined and prohibited from selling, his half interest * * * without having given to the surviving party hereto written notice of such intention to sell."

And it is provided that the surviving party shall have 60 days within which to elect whether or not he will buy, and if he elects so to do the price shall be fixed and payable as provided in case of the sale of an interest during the life of both parties; and, finally, it is—

"mutually covenanted that this agreement shall be irrevocable and shall severally bind the parties hereto, their respective heirs, executors, administrators, and assigns."

By an addendum it was mutually agreed that in no event shall the representatives of a deceased party be deemed to be partners in the business of Barclay & Co.

As I read this agreement, on the death of William O. Barclay, Reginald G. Barclay became vested with the exclusive right to use the common property during his life upon making the payments to the plaintiff of a sum equal to 33⅓ per cent. of the profits each year; that this agreement was irrevocable on his part, and could only be terminated by accepting a proposition by the plaintiff to sell, as therein provided. A sale by the plaintiff to any other person would have transferred only her right to receive the payment of the sum specified for the right of Reginald to exclusively use the common property. There was no right left in the plaintiff to use the common property. Ability to do so had been effectually withdrawn by the provision excluding her from interest or participation in the business. It is clear that it was the intent of the parties to provide a certain and assured income for the family of the deceased party during the lifetime of the other party. It was not intended that the estate was to become involved by the hazards of the business, and a right to sell, limited to the survivor in the first instance, in case a continuance was not found to be advantageous, was reserved.

This agreement was not abrogated by the formation and the attempted transfer of Reginald's interest to a corporation. For such a contingency had been foreseen and provided for in the agreement. When Reginald G. Barclay became vested with the exclusive right to use the common property, his relation to his cotenant became fiduciary. He was bound to use it for their common advantage, and he could not do any act whereby the rights of his cotenants were destroyed and his own left intact, and, above all, he could not acquire to himself the sole use and enjoyment of all the emoluments and privileges of the common property to the exclusion of his cotenant. Had he, without making any transfer, simply notified the plaintiff that he should not continue to use her half of the common property, and thereafter appropriated to himself all of the profits of its use, it is hard to believe that any one would have the temerity to attempt to justify his conduct in a court of equity.

The formation of a corporation, and a transfer of the business and the common property from Reginald G. Barclay to it in consideration of the issuance of all the preferred stock issued by the corporation and $1,998,500 par value of $2,000,000 of common stock issued to him, does not change the condition of the parties, nor relieve the defendants from the trust obligation imposed by the executed agreement. If the corporation was to be treated as a separate entity, having merely issued its stock for the purchase, it does not become a purchaser for value, and took the property subject to the equities existing between the plaintiff and Reginald G. Barclay. Vilas v. Page, 106 N. Y. 439, 465, 13 N. E. 743; Rogers v. N. Y. & T. L. Co., 134 N. Y. 197, 211, 32 N. E. 27. The corporation also had actual notice of the rights of the plaintiff, for specific reference is made thereto in the proposition for sale.

But the corporation defendant should not be considered an entity separate and distinct from Reginald G. Barclay. He holds all but 12 shares of the stock, and is the president and executive head of the corporation. The business of R. G. Barclay, trading as Barclay & Co., is continued and conducted in exactly the same manner, with the same organization and property, by the corporation Barclay & Co. —a mere change of form from Barclay & Co., an individual, to Barclay & Co., a corporation.

"The abstract idea of a corporation, the legal entity, the impalpable and intangible creation of human thought, is itself a fiction, and has been appropriately described as a figure of speech." People, etc., v. N. R. S. R. Co., 121 N. Y. 582, 621, 24 N. E. 834, 839 (9 L. R. A. 33, 18 Am. St. Rep. 843).

"It is suggested that the corporation itself was a separate entity. * * * Theoretically this may be true, but when a court of equity is endeavoring to adjust the rights between the parties, it looks at the merits rather than at the form, and to that end it has been frequently held it will disregard the fiction of a separate entity of a corporation where justice requires it should be done." Goss & Co. v. Goss, 147 App. Div. 698, 702, 132 N. Y. Supp. 76, 79, affirmed 207 N. Y. 742, 101 N. E. 1099.

"The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud." Matter of Rieger, Kapner & Altmark (D. C.) 157 Fed. 609, 613.

It is evident that the sole purpose of the incorporation was to enable, through legal formality, R. G. Barclay to escape from the obligations of the agreement of August 1, 1900, and to appropriate to himself the entire benefits and emoluments from the use of the common property— a clumsily devised scheme to enable him to defraud the widow and children of his deceased brother of their property and to appropriate it to himself, in violation of the trust and confidence reposed in him by his deceased brother, and in disregard of his own contract obligations, irrevocably assumed by him. A corporate form, the fiction of a corporate entity, is too diaphanous a cloak to shield him in a court of equity from full accountability for his acts. The plaintiff is entitled to judgment, with costs against each defendant.

The plaintiff has asked for a decree in the alternative that unless (1) the defendant Barclay transfer and deliver to the plaintiff one-half of the common stock issued to him by the defendant corporation (less

550 shares representing the real estate) and one-half of the $500,000 preferred stock already issued to him by the defendant corporation, or (2) account for and pay over to the plaintiff one-third of the entire profits of the business of the defendant corporation from January 1, 1915, so long as either of the defendants shall use the firm name Barclay & Co. or the trade-marks, trade-name, copyrights, good will, business, secret formulæ, or lists of customers formerly used in connection with the business of Barclay & Co., said payments to be made at the end of each month on accounts duly rendered at the end of each month or as soon thereafter as is practicable, which account shall be subject to verification by the plaintiff herein, or (3) account for and pay over to the plaintiff one-half of said entire profit as aforesaid from January 1, 1915, the defendants be enjoined, etc. This would leave an election to the defendants to adopt either of the three alternatives, whereas the plaintiff should elect as to the relief which she desires. There seems to be no foundation for the third alternative relief.

[4] The plaintiff has the right to ratify the sale to the corporation and recover one-half of the amount of stock that the defendant Barclay received for the common property, or she has the right to have it decreed that the corporation took the property charged with the performance of the agreement of August 1, 1900, in which event the corporation will be adjudged to pay over 33⅓ per cent. of the net profits in accordance with and in the manner provided by the said agreement, and that she have judgment for the surplus due her to January 1, 1915, and such other amounts as have accrued and should have been paid in monthly installments according to the said agreement, or in default thereof that the defendants and each of them be enjoined and restrained from using the name Barclay & Co. or any of the trade-marks, copyrights, labels, trade-name, formulæ, or lists of customers used in connection with the business, and a receiver appointed to sell the same under the direction of the court, and from the proceeds of sale to pay over to the plaintiff any sum that may be due her for accrued profits, together with costs of this action, and one-half of the proceeds of said sale, and to pay to Reginald G. Barclay such sum as may remain in his hands after deducting the expenses of the sale and the receiver's commission.

Settle decision and decree on two days' notice. Findings passed upon.